IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

ANTONIO VILLANUEVA, JR.,                          No. 6:17-cv-00064-HZ

                    Plaintiff,

        v.

NANCY A. BERRYHILL, Acting                        OPINION & ORDER
Commissioner of Social Security,

                    Defendant.

Katherine L. Eitenmiller
Brent Wells
HARDER, WELLS, BARON & MANNING, P.C.
474 Willamette Street
Eugene, Oregon 97401

        Attorneys for Plaintiff

Billy J. Williams
UNITED STATES ATTORNEY
District of Oregon
Renata Gowie
ASSISTANT UNITED STATES ATTORNEY
1000 S.W. Third Avenue, Suite 600
Portland, Oregon 97204-2902


1 - OPINION & ORDER

Sarah Moum
SPECIAL ASSISTANT UNITED STATES ATTORNEY
Office of the General Counsel
Social Security Administration
701 Fifth Avenue, Suite 2900 M/S 221A
Seattle, Washington 98104-7075

    Attorneys for Defendant

HERNANDEZ, District Judge:

    Plaintiff Antonio Villanueva brings this action seeking judicial review of the

Commissioner's final decision to deny supplemental security income (SSI).  This Court has

jurisdiction pursuant to 42 U.S.C. § 405(g) (incorporated by 42 U.S.C. § 1383(c)(3)).  I reverse

the Commissioner's decision and remand for the payment of benefits.

## PROCEDURAL BACKGROUND

    Plaintiff applied for SSI on June 7, 2013, alleging an onset date of February 15, 1991[1]. Tr.

15, 135-42.  His application was denied initially and on reconsideration.  Tr. 60-69, 84-87

(Initial); Tr. 70-83, 95-97 (Recon.).  On July 30, 2015, Plaintiff appeared, with counsel, for a

hearing before an Administrative Law Judge (ALJ).  Tr. 29-59.  On September 25, 2015, the ALJ

found Plaintiff not disabled.  Tr. 12-28.  The Appeals Council denied review.  Tr. 1-5.

## FACTUAL BACKGROUND

    Plaintiff alleges disability based on having a foot injury from birth, chest pain, headaches,

abdominal pain, pneumonia, shortness of breath, problems with hands and fingers, problems

thinking and paying attention, memory loss, and problems with concentration.  Tr. 151, 173, 177.

At the time of the hearing, he was twenty-four years old.  Tr. 36.  He completed ninth grade.  Tr.

---

[1] At the hearing, Plaintiff amended his alleged onset date to June 7, 2013.  Tr. 15, 33-34.

49-50.  He has no past relevant work experience.  Tr. 24.

## SEQUENTIAL DISABILITY EVALUATION

A claimant is disabled if unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months[.]"  42 U.S.C. §§ 423(d)(1)(A), 1382c(3)(a).

Disability claims are evaluated according to a five-step procedure.  *See Valentine v. Comm'r*, 574 F.3d 685, 689 (9th Cir. 2009) (in social security cases, agency uses five-step procedure to determine disability).   The claimant bears the ultimate burden of proving disability.  *Id.*

In the first step, the Commissioner determines whether a claimant is engaged in "substantial gainful activity."  If so, the claimant is not disabled.  *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987); 20 C.F.R. §§ 404.1520(b), 416.920(b).  In step two, the Commissioner determines whether the claimant has a "medically severe impairment or combination of impairments."  *Yuckert*, 482 U.S. at 140-41; 20 C.F.R. §§ 404.1520(c), 416.920(c).  If not, the claimant is not disabled.

In step three, the Commissioner determines whether plaintiff's impairments, singly or in combination, meet or equal "one of a number of listed impairments that the [Commissioner] acknowledges are so severe as to preclude substantial gainful activity."  *Yuckert*, 482 U.S. at 141; 20 C.F.R. §§ 404.1520(d), 416.920(d).  If so, the claimant is conclusively presumed disabled; if not, the Commissioner proceeds to step four.  *Yucker*t, 482 U.S. at 141.

In step four, the Commissioner determines whether the claimant, despite any

impairment(s), has the residual functional capacity (RFC) to perform "past relevant work." 20

C.F.R. §§ 404.1520(e), 416.920(e). If the claimant can perform past relevant work, the claimant

is not disabled. If the claimant cannot perform past relevant work, the burden shifts to the

Commissioner. In step five, the Commissioner must establish that the claimant can perform

other work. *Yuckert*, 482 U.S. at 141-42; 20 C.F.R. §§ 404.1520(e) & (f), 416.920(e) & (f). If

the Commissioner meets his burden and proves that the claimant is able to perform other work

which exists in the national economy, the claimant is not disabled. 20 C.F.R. §§ 404.1566,

416.966.

## THE ALJ'S DECISION

At step one, the ALJ determined that Plaintiff had not engaged in substantial gainful

activity since June 7, 2013, his application date and his amended alleged onset date. Tr. 17.

Next, at steps two and three, the ALJ determined that Plaintiff has severe impairments of anxiety

disorder, dysthymic disorder, and rule out borderline intellectual functioning but that the

impairments did not meet or equal, either singly or in combination, a listed impairment. Tr. 17-

20.

At step four, the ALJ concluded that Plaintiff has the RFC to perform a full range of work

except he is limited to simple, repetitive, and routine tasks, no more than occasional interaction

with supervisors and co-workers, and no contact with the general public. Tr. 20. With this RFC,

the ALJ determined that Plaintiff is able to perform jobs that exist in significant numbers in the

economy such as small products assembler, machine feeder, and electronics worker. Tr. 24-25.

Thus, the ALJ determined that Plaintiff is not disabled. Tr. 25.

/ / /

STANDARD OF REVIEW

A court may set aside the Commissioner's denial of benefits only when the Commissioner's findings are based on legal error or are not supported by substantial evidence in the record as a whole. *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009). "Substantial evidence means more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (internal quotation marks omitted). The court considers the record as a whole, including both the evidence that supports and detracts from the Commissioner's decision. *Id.*; *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007). "Where the evidence is susceptible to more than one rational interpretation, the ALJ's decision must be affirmed." *Vasquez*, 572 F.3d at 591 (internal quotation marks and brackets omitted); *see also Massachi v. Astrue*, 486 F.3d 1149, 1152 (9th Cir. 2007) ("Where the evidence as a whole can support either a grant or a denial, [the court] may not substitute [its] judgment for the ALJ's") (internal quotation marks omitted).

DISCUSSION

Plaintiff alleges the ALJ made the following errors: (1) improperly rejecting Plaintiff's subjective limitations testimony; (2) improperly rejecting two medical opinions; and (3) failing to find somatoform disorder a severe impairment at step two. Because I agree with Plaintiff that the ALJ erred at step two and in rejecting one of the medical opinions, and I agree that remand for benefits is warranted, I do not discuss Plaintiff's other arguments.

I. Step Two

The ALJ considers the severity of the claimant's impairment(s) at step two. 20 C.F.R. § 416.920(a)(4)(ii). The step two inquiry is a *de minimis* screening device used to dispose of

groundless claims. *Yuckert*, 482 U.S. at 153-54; *Smolen v. Chater*, 80 F.3d 1273, 1290 (9th Cir. 1996). The claimant bears the burden of establishing that he has a severe impairment at step two by providing medical evidence. 20 C.F.R. § 416.912(a). An impairment or combination of impairments is "not severe *only if* the evidence establishes a slight abnormality that has no more than a minimal effect on an individual's ability to work." *Webb v. Barnhart*, 433 F.3d 683, 686 (9th Cir. 2005) (internal quotation marks omitted). Where the ALJ fails to identify a severe impairment at step two, but nonetheless considers the limitations from that impairment at subsequent steps, the error at step two is harmless. *Lewis v. Astrue*, 498 F.3d 909, 911 (9th Cir. 2007).

The ALJ found that Plaintiff had no medically determinable physical impairments but that he had severe mental impairments of anxiety disorder, dysthymic disorder, and rule out borderline intellectual functioning. Tr. 17-18. The ALJ rejected the opinion of examining psychologist Scott Alvord, Psy.D., that Plaintiff suffered from somatoform disorder.[2] Tr. 18. The ALJ acknowledged that Dr. Alvord was an acceptable medical source, but the ALJ discounted the diagnosis because "the nature of this condition rests heavily on the claimant's self-report, of which there are significant credibility concerns discussed thoroughly below." *Id.* The ALJ then added that "[m]oreover, despite the complaints on which Dr. Alvord relied for that diagnosis, the claimant did not, at other times, present with the same level of complaints and preoccupation with aches and pains." *Id.* As an example, the ALJ noted that although the

---

[2] *See* Am. Psych. Ass'n*, Diagnostic & Statistical Manual of Mental Disorders* 311-15 (5th ed. 2013) (DSM-5) (explaining Somatic Symptom Disorder and listing diagnostic criteria); 20 C.F.R. Part 404, Subpt. P, App. 1 § 12.07 (setting out criteria for establishing somatic symptom and related disorders as a listed impairment).

Plaintiff "complained to Dr. Alvord of heart symptoms that made him fear he had 'cancer' in his heart[,]" he went to the emergency room on only a few occasions and at other times, he denied chest pain or palpitations. *Id.* Thus, the ALJ found that somatoform disorder was not a medically determinable impairment. *Id.*

In arguing that the ALJ erred, Plaintiff relies on a 2017 Ninth Circuit decision which acknowledged the general rule that an ALJ may disregard a physician's opinion of disability which is "premised to a large extent upon the claimant's own accounts of his symptoms and limitations" when those complaints have been properly discounted. *Buck v. Berryhill*, 869 F.3d 1040, 1049 (9th Cir. 2017) (internal quotation marks omitted). In *Buck*, the ALJ discounted Plaintiff's testimony as not credible. *Id.* at 1047. Then, based in part on the fact that an examining psychologist had relied on the plaintiff's self-reported symptoms, the ALJ rejected the psychologist's opinion that the plaintiff suffered various mental impairments which caused several functional limitations including the ability to sustain or maintain work. *Id.* at 1049.

The Ninth Circuit concluded that this was error in the context of a psychological impairment. *Id.* The court observed that although the psychologist's opinion was based in part on the plaintiff's self-report about problems keeping a job, the psychologist "also conducted a clinical interview and a mental status evaluation." *Id.* "These," the Ninth Circuit observed, "are objective measures and cannot be discounted as a 'self-report.'" *Id.* The court further explained that reports of psychiatrists "should not be rejected simply because of the relative imprecision of the psychiatric methodology." *Id.* (internal quotation marks omitted). Continuing, the court explained:

[p]sychiatric evaluations may appear subjective, especially compared to

evaluation in other medical fields. Diagnoses will always depend in part on the patient's self-report, as well as on the clinician's observations of the patient. But such is the nature of psychiatry. *See Poulin* [*v. Bowen*], 817 F.2d [865,] 873 [(D.C. Cir. 1987)] ("[U]nlike a broken arm, a mind cannot be x-rayed."). Thus, the rule allowing an ALJ to reject opinions based on self-reports does not apply in the same manner to opinions regarding mental illness.

*Id.*

Here, Dr. Alvord conducted an in-person clinical interview. Tr. 262-68. He conducted a mental status examination. *Id.* He reviewed several records, including medical records and reports by consultative examiners Pamela Roman, Ph.D, and J. Wendling, D.O. *Id.* He administered several tests including the Weschsler Adult Intelligence Scale 4th Edition (WAIS IV), the Weschsler Memory Scale 4th Edition (WMS IV and selected subtests for screening), the Trail Making Test, and the Beck Depression Inventory. *Id.* His report contains detailed information about Plaintiff's history and background including sections addressing his family, social, and development history; his education; his employment; his medical and psychiatric history; and his current symptoms. *Id.* Dr. Alvord discussed the mental status examination and his behavioral observations. *Id.* Then, he concluded with his diagnostic impressions and functional assessment. *Id.* He separately completed a Mental Residual Functional Capacity Report (MRFC). Tr. 270-73.

Based on all of these clinical tools, Dr. Alvord concluded that Plaintiff had several diagnoses but "[f]irst and foremost," he stated, Plaintiff "meets the criteria for Undifferentiated Somatoform Disorder." *Id.* He wrote:

He is very physically preoccupied, which is driving anxiety and unfortunately, given the psychiatric etiology of physical complaints, is not likely to respond to physical treatments. In other words, only psychiatric treatment is likely to address his physical complaints, but unfortunately, he is minimally open to psychiatric

care and therefore is unlikely to experience physical symptom remission. As is often the case with similar individuals, physical and psychiatric symptoms compound as an individual ages and "true" physical symptoms become contributory. Numerous physical complaints voiced during our encounter include heart problems, lower GI distress, pain in his foot, concerns regarding his testicles, etc. I suspect those symptoms have been present long-term and given his limited insight and intellectual limitations, his psychiatric symptoms are worsening as he gets limited benefit medically for his physical complaints.

Tr. 267.

Dr. Alvord later explained that Plaintiff also had borderline intellectual functioning which he believed was responsible for his failure to pass the GED test and his struggles in employment. *Id.* He also observed that Plaintiff had dysthymic disorder and an anxiety disorder. *Id.* He noted that Plaintiff had received no psychiatric care but, Dr. Alvord stated, Plaintiff's intellectual limitations and "somatic complaints, etc.," were impacting Plaintiff's "ability/desire" to take antidepressants. *Id.* Moreover, his limited insight would interfere with any benefit from therapy. *Id.*

Given the in-depth clinical interview, the administration of tests, and the mental status examination, Dr. Alvord's opinion, like the opinion of the psychologist in *Buck*, was based on a number of objective measures. As the Ninth Circuit explained, psychiatric "[d]iagnoses will always depend in part on the patient's self-report[.]" 869 F.3d at 1049. As the court observed, psychiatry is unique in this way, and thus, rules developed for the treatment of medical opinions are not always applicable when psychiatric/psychological diagnoses are concerned. Defendant's argument to the contrary fails to address *Buck*. Thus, even assuming for the purposes of this Opinion that the ALJ's credibility determination is supportable, that determination does not support rejecting Dr. Alvord's opinion simply because it was based on Plaintiff's self-reports.

Because of the several objective measures employed by Dr. Alvord and the nature of his discipline, the ALJ erred by rejecting Dr. Alvord's somatoform diagnosis because it relied on Plaintiff's self-report.

The ALJ also noted that Plaintiff's physical complaints to Dr. Alvord were not supported by medical records independently demonstrating his preoccupation with his physical health. As Plaintiff notes, however, Plaintiff's recitation of physical complaints to Dr. Alvord was not limited to "heart cancer" or chest symptoms. In his report, Dr. Alvord noted the following complaints from Plaintiff: (1) born with a club foot and currently experiences foot pain after standing too long, difficulty running and walking, increased pain as he has gotten older; (2) poor stamina and fatigue he equated to heart problems; (3) demonstrating to Dr. Alvord his limited range of motion in leg with a history of clubfoot; (4) demonstrating to Dr. Alvord allegedly smaller muscle in leg with history of clubfoot, but which Dr. Alvord noted appeared to be the same size as the other leg; (5) heart problems which "comes and goes"; (6) fear of cancer in his heart; (7) numerous gastrointestinal complaints; (8) heart burn pain; (9) lethargy and fatigue; and (10) concerns with his testicles. Tr. 262-67.

The ALJ was correct in observing that on certain occasions, Plaintiff did not complain of chest pain or palpations when seeking medical care. Tr. 18 (citing Tr. 196, Tr. 275, Tr. 315). But, when examining the record as a whole, it is apparent that the ALJ cherry-picked three isolated instances when the Plaintiff presented to the emergency room for acute injuries. For example, on September 28, 2006, when Plaintiff was fifteen years old, he presented to the emergency room with a cut lip. Tr. 275. On April 13, 2012, he went to the emergency room with a broken nose. Tr. 196. And, in July 2015, he went to the emergency room because of a

pustulating infection in his arm.  Tr. 318.  Although he did not complain of chest pain at these

times, that does not detract from the numerous times he sought or received medical attention for

concerns of chest pain.  Tr. 249-54 (Mar. 15, 2013 emergency room visit for chest pain for past

two to three hours); Tr. 218 (Nov. 16, 2013 report of chest pain upon exertion to Dr. Wendling);

Tr. 237-40 (Jan. 27, 2014 emergency room visit for right upper quadrant pain lasting for several

days); Tr. 234 (Apr. 11, 2014 report to Sacred Heart Riverbend with chest pain upon exertion);

Tr. 232 (Apr. 11, 2014 stress echocardiogram); Tr. 285 (Apr. 3, 2015 emergency room visit for

rapid heart rate and palpitations and feeling of heart skipping); Tr. 219 (May 7, 2015 emergency

room visit for chest discomfort and palpitations); Tr. 291 (May 8, 2015 emergency room visit for

chest pain with sudden onset several days prior); Tr. 345 (Aug. 8, 2105 emergency department

visit complaining of sharp pain in left chest).

Moreover, the ALJ failed to note additional instances of Plaintiff's discussing or seeking

and receiving medical care related to the other physical complaints mentioned by Dr. Alvord.

*E.g.*, Tr. 211-13 (Nov. 2, 2013 report to Dr. Roman of foot pain, left side paralysis, chest pain,

and headaches; general complaint of "poor health"); Tr. 218-22 (Nov. 16, 2013 report to Dr.

Wendling of foot pain); Tr. 228-29 (Apr. 18, 2014 upper GI endoscopy due to complaints of

epigastric abdominal pain); Tr. 230-31 (Apr. 18, 2014 colonoscopy due to complaints of chronic

diarrhea); Tr. 292 (May 8, 2015 differential diagnosis at emergency department visit for chest

pain included gastritis); Tr. 304-05 (May 14, 2015 emergency department visit for testicular

pain); Tr. 313 (June 16, 2015 emergency department visit for testicular lump).[3]

---

[3]  The record also shows that before early 2014, Plaintiff had no health insurance.
*Compare* Tr. 212 (Nov. 1, 2014 report by Dr. Roman noting that Plaintiff did not yet have
Oregon Health Plan coverage but had applied), *with* Tr. 245 (Jan. 22, 2014 emergency

The overall medical record documents frequent medical visits for, discussion of, and preoccupation with a variety of physical complaints. Thus, the record supports Dr. Alvord's diagnosis based upon his examination. The ALJ erred in concluding otherwise based on a few isolated instances.

The ALJ failed to support his step two rejection of Dr. Alvord's somatoform disorder with specific and legitimate reasons supported by substantial evidence in the record. The error was not harmless. Somatic symptom disorders are one of the listed impairments the ALJ must consider at step three. 20 C.F.R. Part 404, Subpt. P, App. 1 § 12.07. Because the ALJ erred in rejecting the diagnosis, he did not consider it at step three. Additionally, because he improperly rejected the diagnosis, he failed to include any functional limitations attributable to it in his RFC. This affected his conclusion at step five. Based on this error alone, the Commissioner's decision must be reversed.

II. Medical Opinions

Plaintiff argues that the ALJ improperly rejected the opinions of treating psychologists Dr. Roman and Dr. Alvord. Generally, to "'reject [the] uncontradicted opinion of a treating or examining doctor, an ALJ must state clear and convincing reasons that are supported by substantial evidence.'" *Ryan v. Comm'r*, 528 F.3d 1194, 1198 (9th Cir. 2008) (quoting *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005)) (brackets in *Ryan*). "'If a treating or examining doctor's opinion is contradicted by another doctor's opinion, an ALJ may only reject it by providing specific and legitimate reasons that are supported by substantial evidence.'" *Id.*

---

department record showing enrolled in the Oregon Health Plan). It would be error to fault Plaintiff for an absence of medical records for the time period before he had health insurance.

(quoting *Bayliss*, 427 F.3d at 1216).

Because I agree with Plaintiff regarding the ALJ's treatment of Dr. Alvord's opinion and because crediting his opinion establishes disability at step five, I do not discuss the ALJ's treatment of Dr. Roman's opinion.

Dr. Alvord's report is discussed above in regard to the step two error. Based on his examination, and his diagnostic impressions, he opined that Plaintiff would have no difficulty performing simple and repetitive tasks, but would have difficulty with the following functions: (1) performing detailed and complex tasks; (2) accepting instructions from supervisors; (3) interacting with co-workers and the public; (4) performing work activities on a consistent basis without special or additional instructions; (5) maintaining regular attendance in the workplace; (6) completing a normal workday/workweek without interruptions from a psychiatric condition; and (8) dealing with the usual stress encountered in the workplace. Tr. 268.

In the separately-filed MRFC, Dr. Alvord found Plaintiff moderately limited in the ability to understand and remember detailed instructions. Tr. 271. He also found Plaintiff moderately limited in the following assessments of concentration and persistence: (1) ability to carry out detailed instructions, (2) ability to maintain attention and concentration for extended periods, (3) ability to perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances, (4) ability to sustain an ordinary routine without special supervision, and (5) ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods. Tr. 271-72. The MRFC included a definition of "moderately limited" as follows: "A limitation which seriously interferes with the individual's

ability to perform the designated activity on a regular and sustained basis, i.e. 8 hours a day, 5 days a week, or an equivalent, work schedule." Tr. 270.

In the part of his opinion supporting his RFC, the ALJ explained that he was giving "little weight" to Dr. Alvord's assessed limitations because they were not consistent with the overall medical evidence of the record, they were not consistent with reports from Dr. Roman and Dr. Wendling, and they were not consistent with Plaintiff's report that he has done some work, apparently without difficulty. Tr. 23. The ALJ explained that contrary to Dr. Alvord's assessment that Plaintiff would have difficulty with maintaining regular attendance in the workplace, he presented early or on time to evaluations in 2015. *Id.* Plaintiff also described no difficulties with attendance or disruption when he did landscaping jobs. *Id.*

The ALJ explained that contrary to Dr. Alvord's assessed difficulty performing work activities without additional or special instructions, Dr. Roman noted that Plaintiff was able to understand and remember simple instructions during the interview. *Id.* The ALJ then explained that Dr. Alvord's assessed limitations appeared to be based in large part on Plaintiff's subjective report, which he found less than credible. *Id.* The ALJ noted that for example, Plaintiff told Dr. Alvord that he had experienced panic attacks in the past year. *Id.* But, the medical evidence made no other mention of panic attacks and Plaintiff made no mention of them at the hearing. *Id.* The ALJ also noted that while Plaintiff reported to Dr. Alvord that he did not have a driver's license and had never attempted to obtain one, his testimony at the hearing was that his driver's license had been suspended. *Id.* Although the relevance of this last reason is not entirely clear, presumably the ALJ meant to establish that because Plaintiff provided information to Dr. Alvord that was contradicted elsewhere in the record, any information he provided to Dr. Alvord should

be viewed as unreliable.

Plaintiff argues that the ALJ erred in rejecting Dr. Alvord's opinions because (1) the ALJ failed to specifically identify the alleged inconsistency between Dr. Alvord's assessment and Dr. Wendling's or between Dr. Alvord's assessment and the overall record; (2) the ALJ erred in concluding that Dr. Alvord's assessment was inconsistent with Dr. Roman's assessment; (3) the ALJ erred in concluding that Dr. Alvord's assessment was inconsistent with Plaintiff's activities; and (4) the ALJ erred in rejecting Dr. Alvord's opinion because it was based largely on Plaintiff's self-report.

I agree with Plaintiff that the ALJ did not provide specific enough information about the alleged inconsistency between Dr. Alvord's opinion and Dr. Wendling's evaluation. The ALJ said only that Dr. Alvord's assessed limitations are not consistent with the report from Dr. Wendling. Tr. 23. Dr. Wendling saw Plaintiff for twenty-minutes in November 2013, about eighteen months before Dr. Alvord's evaluation. Tr. 218-22. She conducted a physical examination, not a psychological examination. *Id.* As reported by Dr. Wendling, Plaintiff's "history of present illness" related to physical complaints of foot pain resulting from his being born with a club foot and having corrective surgery at age two. Tr. 218. Her physical examination addressed only his physical health. Tr. 219-21. In her observations, she noted that he was emotionally stable, not disheveled, had "no mental health signs," and that his concentration, pace, and persistence were intact. *Id.* However, she conducted no psychological tests. Tr. 218-22. Her functional assessments addressed only physical limitations. *Id.*

Given that Dr. Wendling conducted a physical examination, not a psychological one, spent only twenty minutes with Plaintiff assessing his physical complaint and condition, and

issued functional assessments addressing only his physical limitations, it is unclear how her limited observation of Plaintiff's mental status can reasonably discredit Dr. Alvord's opinion. Moreover, Dr. Wendling's observation that Plaintiff's concentration, pace, and persistence were intact is not obviously inconsistent with Dr. Alvord's assessments regarding Plaintiff's impairment in *sustained* concentration and persistence abilities. Dr. Alvord opined that Plaintiff could carry out short and simple instructions and could work in proximity to or in coordination with others without being distracted by them. His moderate limitation assessments concern such abilities as sustaining attention, concentration, attendance, etc. for extended periods of time. Because Dr. Wendling spent only twenty minutes with Plaintiff and conducted no psychological tests, she could not have offered a valid opinion as to any sustained abilities. Without more, the ALJ's citing to Dr. Wendling's report as allegedly undermining Dr. Alvord's assessment is not a specific enough reason to support the ALJ's rejection of Dr. Alvord's opinion. *See Renfroe v. Berryhill*, No. 2:15-CV-02219-JE, 2017 WL 4159400, at *4 (D. Or. Aug. 31, 2017) ("broad, generalized statement" that physician's opinion "was inconsistent with the medical record, without more, does not meet the specific and legitimate legal standard") (citing and discussing *Brown-Hunter v. Colvin*, 806 F.3d 487, 494 (9th Cir. 2015); *Garrison v. Colvin*, 759 F.3d 995, 1012 (9th Cir. 2014)), *adopted* 2017 WL 4159368 (D. Or. Sept. 18, 2017).

The ALJ also failed to provide a specific and legitimate reason to reject Dr. Alvord's opinion by generally stating that Dr. Alvord's assessments were inconsistent with "the overall medical evidence of record[.]" Tr. 23. *Renfroe*, 2017 WL 4159400, at *4. To the extent the two examples given by the ALJ were intended to provide support for this generalized statement, and it is not at all clear that the ALJ intended them as such, they fail to show any inconsistency. The

ALJ stated that Plaintiff's ability to arrive at two appointments early or on time (to the evaluations with Dr. Roman and with Dr. Alvord) were inconsistent with Dr. Alvord's assessment of difficulty with maintaining regular attendance in the workplace. Tr. 23. But, punctually arriving at a scheduled one-time appointment is not a fair comparison to the sustained ability to report to work every day, week after week, without interruption. The same is true for Plaintiff's apparent lack of attendance problems or disruption in the one-week landscaping job he performed, the only other example given by the ALJ. Even assuming there were no such problems, which the ALJ did not elicit during his questioning, the ability to perform a one-week landscaping job is not indicative of the ability to sustain regular attendance at work over a longer period of time. Thus, the ALJ failed to offer specific and legitimate reasons for rejecting Dr. Alvord's testimony by generally citing to unspecified inconsistency with the overall medical evidence or by relying on these two examples.

Next, in regard to the alleged inconsistency between Dr. Roman's and Dr. Alvord's reports, the ALJ provided a single example: Dr. Alvord assessed difficulty performing work activities consistently without additional or special instructions but Dr. Roman noted that Plaintiff was able to understand and remember simple instructions during the interview. Tr. 23. Plaintiff argues that the reports by the two examining psychologists are not inconsistent.

Both Dr. Alvord and Dr. Roman opined that Plaintiff was not limited in his ability to understand and remember simple instructions. Tr. 215 (Dr. Roman stating that Plaintiff was able to understand and remember simple instructions during the interview); Tr. 271 (Dr. Alvord opining that Plaintiff was not significantly limited in the ability to understand and remember very short and simple instructions; also opining that he was not significantly limited in his ability to

carry out very short and simple instructions); *see also* Tr. 268 (Dr. Alvord opining that Plaintiff would not have difficulty performing simple and repetitive tasks).  Their opinions on this issue are consistent, not inconsistent.  Comparing their opinions shows that while both believed Plaintiff could understand and remember simple instructions, and could carry out short and simple instructions, both believed Plaintiff would be unable to perform *work* activities on a sustained basis for a variety of reasons.  Thus, while the ALJ gave a specific reason for why he concluded that Dr. Alvord's opinion was inconsistent with Dr. Roman's opinion, it was not based upon substantial evidence in the record because a comparison of the opinions reveals their consistency, not inconsistency.

Next, the ALJ rejected Dr. Alvord's limitations because they were based "in large" part on Plaintiff's subjective report.  For the reasons explained in regard to the step two discussion, this is not a specific and legitimate reason for discounting Dr. Alvord's opinion.

Finally, the ALJ relied on Plaintiff's unspecified "activities" as being inconsistent with Dr. Alvord's limitations.  This was not a specific and legitimate basis for several reasons.  First, a general allegation of inconsistency with "activities" fails to meet the required standard of being specific.  Second, even if I consider several of the activities the ALJ mentioned in a different part of the opinion addressing Plaintiff's credibility, several of them are of a type that cannot reasonably be found to be inconsistent with mental functional limitations generally and particularly with the two mental functional limitations by Dr. Alvord that the ALJ specifically noted . Tr. 23 (noting Dr. Alvord's limitation of maintaining regular attendance in the workplace and difficulty performing work activities consistently without additional or special instructions); Tr. 21 (noting ability to do some household chores, prepare meals, take his child to the park with

his girlfriend).

Third, even if I consider the activities the ALJ previously mentioned that could possibly be incompatible with these mental functional limitations, the record does not support a finding of inconsistency. The ALJ noted that Plaintiff used the internet, read magazines, and played video games. Tr. 21. He further noted that Plaintiff played video games for a "significant period" during the day. *Id.* The ability to use the internet and read magazines is not incompatible with limitations of difficulty in maintaining regular attendance in the workplace and difficulty performing work activities consistently without additional or special instructions. *See*, *e.g.*, *Orn*, 495 F.3d at 639 (the ability to carry out certain minimal activities such as reading or watching television does not detract from credibility and do not "bear a meaningful relationship to the activities of the workplace").

As to playing video games, while compared to watching television the activity may require more than just passive observation, the record does not clearly establish that Plaintiff's video game playing is inconsistent with the limitations on regular attendance or the need for additional or special instructions. Dr. Wendling noted that Plaintiff stated that he played videogames a "significant period of time during the day[.]" Tr. 218. There is no further description or specification of what is meant by "significant." Other references in the record refer to the activity but without any indication that it occupies a significant amount of this time. *E.g.*, Tr. 211 (report to Dr. Roman that he plays video games and watches TV during the day and does chores); Tr. 213 (report to Dr. Roman that in the morning he watches the news, in the afternoon he does chores around the house, he sometimes looks at cars on the computer, his hobbies include watching television and playing video games); Tr. 265 (report to Dr. Alvord that he did

minimal chores, occasionally cared for his daughter independently but usually, his daughter's grandmother was also on hand or directly involved); Tr. 163 (Aug, 2013 Function Report stating that he watches television, reads, plays video games, and goes to the park); *see also* Tr. 48 (hearing testimony noting that he watches movies on the internet, but mostly cartoons, tries to read magazines but not books, and no longer plays videogames because he no longer has a videogame player). For all of these reasons, the ALJ's rejection of Dr. Alvord's report because the mental functional limitations were inconsistent with Plaintiff's activities is not a specific and legitimate reason supported by the substantial evidence in the record. As a result, the ALJ erred in rejecting Dr. Alvord's functional limitations.

III. Remedy

The ALJ's errors at step two and in rejecting Dr. Alvord's opinion require reversal and remand. The next issue is whether to remand for additional proceedings or for the payment of benefits. *See Garrison v. Colvin*, 759 F.3d 995, 1019 (9th Cir. 2014) (explaining that if "additional proceedings can remedy defects in the original administrative proceeding, a social security case should be remanded[,]" but "in appropriate circumstances courts are free to reverse and remand a determination by the Commissioner with instructions to calculate and award benefits") (internal quotation marks omitted).

To determine which type of remand is appropriate, the Ninth Circuit uses a three-part test. *Id.* at 1020; *see also Treichler v. Comm'r*, 775 F.3d 1090, 1100 (2014) ("credit-as-true" rule has three steps). First, the ALJ must fail to provide legally sufficient reasons for rejecting evidence, whether claimant testimony or medical opinion. *Garrison*, 759 F.3d at 1020. Second, the record must be fully developed and further administrative proceedings would serve no useful purpose.

*Id.* Third, if the case is remanded and the improperly discredited evidence is credited as true, the ALJ would be required to find the claimant disabled. *Id.* To remand for an award of benefits, each part must be satisfied. *Id.; see also Treichler*, 775 F.3d at 1101 (when all three elements are met, "a case raises the 'rare circumstances' that allow us to exercise our discretion to depart from the ordinary remand rule" of remanding to the agency).

All three parts of the test are satisfied in this case. First, the ALJ erred by failing to provide legally sufficient reasons for rejecting Dr. Alvord's medical opinions. Second, although the ALJ's error at step two would still leave the record undeveloped at step three and in formulating the RFC to be used at step five, the error in rejecting Dr. Alvord's functional limitations opinion leaves no unresolved issues. Even assuming for the purposes of this Opinion that the ALJ committed no other errors, the record as a whole does not reveal conflicts or ambiguities. Third, when Dr. Alvord's functional limitations are fully credited, the ALJ would be required to find Plaintiff disabled. *See* Tr. 58 (vocational expert testimony establishing that unexcused and unscheduled absences as well as inability to be on task at least ninety-percent of an eight-hour workday would make a claimant "competitively unemployable"); Tr. 268 (Dr. Alvord opinion that Plaintiff would have difficulty maintaining regular attendance in the workplace and would have difficulty dealing completing a normal workday or workweek without interruptions from a psychiatric condition).

/ / /

/ / /

/ / /

/ / /

CONCLUSION

The Commissioner's decision is reversed and remanded for the payment of benefits.

IS IT SO ORDERED.

Dated this _____ day of _____, 2018.

_____
Marco A. Hernandez
United States District Judge